## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____
                                                        )
MERRILL STEINBERG, Individually and On        )
Behalf of All Others Similarly Situated,              )    **CIVIL ACTION NO. 07-CV-9615-RPP**
                                                        )
                    Plaintiff,                          )    "ECF CASE"
                                                        )
vs.                                                     )
                                                        )
ERICSSON LM TELEPHONE CO., CARL-              )
HENRIC SVANBERG and KARL-HENRIK             )
SUNDSTROM,                                             )
                                                        )
                    Defendants.                         )
_____      )


**LEAD PLAINTIFF JACQUES FURHER'S MEMORANDUM OF LAW
IN OPPOSITION TO THE LABATON GROUP'S
MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT…………………….. ............................................................................. 2

   A.    MOTIONS FOR RECONSIDERATION ARE DISFAVORED .......................................... 2

   B.    THE "NEWLY DISCOVERED" EVIDENCE IS IRRELEVANT
       AND WAS IMPROPERLY SUBMITTED ...................................................................... 3

   C.    MR. FURHER'S MOTION WAS NOT "ATTORNEY-DRIVEN" ................................... 6

   D.    THE "NEW EVIDENCE" CITED BY THE LABATON GROUP
       DOES NOT ADDRESS THIS COURT'S CONCERNS ..................................................... 7

   E.    MR. FURHER'S TRANSACTIONS WERE CONDUCTED
       IN THE UNITED STATES ........................................................................................ 8

   F.    PERSONAL ATTACKS ARE MISPLACED ON THIS MOTION AND
       AFFORD NO REASON TO RECONSIDER ................................................................ 10

CONCLUSION   …………….. ................................................................................ 12

**PRELIMINARY STATEMENT**

Lead Plaintiff Jacques Furher respectfully submits this memorandum of law in opposition to the Labaton Group's[1] motion for reconsideration of this Court's February 19, 2008 Order appointing Mr. Furher Lead Plaintiff (the "February 19 Order").

Sixteen days after this Court appointed Jacques Furher Lead Plaintiff in this action, the Labaton Group moved under Fed. R. Civ. P. 60 and Local Rule 6.3 to reopen the order. The Labaton Group claims there is newly discovered evidence. Even if the "new evidence" was relevant, it is not new, nor is it really evidence. It is simply conjecture and innuendo by an unhappy movant. Furthermore, any information in the Labaton Group's motion could certainly have been discovered with due diligence prior to this Court's decision.

To achieve its desired result, the Labaton Group, without a reasonable basis, challenges Mr. Furher's assertion that his securities transactions were placed in the United States and executed on United States exchanges and submits *its own* affidavit and claims it is newly discovered evidence.

The Labaton Group's *ad hominem* attacks and ill-informed arguments are simply factually incorrect. In the end, the Labaton Group's motion raises neither facts nor controlling authority that would allow this Court to reconsider its February 19 Order and the motion should be denied in its entirety.

---

[1] The Labaton Group is comprised of (i) The City of Edinburgh Council on behalf of The Lothian Pension Fund ("Lothian"); (ii) Fortis Investment Management N.V./S.A. ("Fortis"); (iii) Deka Investment GmbH ("Deka"); and (iv) State-Boston Retirement System ("Boston").

## ARGUMENT

### A.     MOTIONS FOR RECONSIDERATION ARE DISFAVORED

Motions for reconsideration, whether under Fed. R. Civ. P. 60 or Local Rule 6.3 are disfavored. *See, e.g.*, *U.S. v. Int'l Bd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (Rule 60(b) motions are "generally not favored and [are] properly granted only on a showing of exceptional circumstances"); *Taggart v. Moody's Investors Serv.*, 06 Civ. 3388, 2007 WL 2809846, at *1 (S.D.N.Y. Sept. 26, 2007) (Castel, J.) (party seeking reconsideration under Local Civil Rule 6.3, "faces a heavy burden. Reconsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."). The Second Circuit has held the standard on such a motion is onerous:

> The party seeking relief from judgment [under Rule 60(b)(2)] has an onerous standard to meet. District courts have characterized the test in the following manner:
>
> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Int'l Bd. of Teamsters*, 247 F.3d at 392 (citation omitted); *see also Jordan v. Verizon Corp.*, No. 02-CV-10144 (GBD), 2007 WL 4591924, at *3 (S.D.N.Y. Dec. 27, 2007) (Daniels, J.) (denying Fed. R. Civ. P. 60(b)(2) motion because movant failed to demonstrate diligence or how the newly "discovered" evidence changed the result).

A motion for reconsideration or re-argument under Local Rule 6.3 shall be granted only if "the court has overlooked matters or controlling decisions which, had they been considered might reasonably have altered the result reached by the court." *Alzamora v. Village of Chester*, No. 06 Civ. 7644(WCC), 2008 WL 375091, at *3 (S.D.N.Y. Feb. 8, 2008) (Conner, J.); *Word v.*

2

*Croce*, No. 01 Civ. 9614(LTS), 2004 WL 434038, at *2 (S.D.N.Y. Mar. 9, 2004) (Swain, J.).[2] A Local Rule 6.3 motion is not "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (Rakoff, J.). Here, the Labaton Group does not identify a single argument overlooked by the Court but improperly reargues the very same facts regarding the formation of the group that Court took under consideration and rejected.

### B.    THE "NEWLY DISCOVERED" EVIDENCE IS IRRELEVANT AND WAS IMPROPERLY SUBMITTED

Local Rule 6.3 states "no affidavits shall be filed by any party unless directed by the court." Therefore the affidavit, whatever its worth, should not even be considered by the Court. *Articrat Leisure Limited v. Deutsche Bank Trust Co. Americas*, No. 04-cv-10014(PKL), 2007 WL 404768, at *2 (S.D.N.Y. Feb. 5, 2007) (Leisure, J.) (refusing to consider an improperly filed affidavit); *Jackson v. City of New York*, No. 06 Civ. 721 RWS MHD, 2006 WL 3208512, at *2 (S.D.N.Y. Nov. 3, 2006) (Dolinger, M.J.) (refusing to consider an affidavit improperly filed in connection with a Rule 6.3 motion).

Even were the Court to consider the affidavit, it is irrelevant and certainly does not meet the standard of newly discovered evidence that could not have been discovered with due diligence. The affidavit is by one of the moving parties, so it certainly could have been submitted with their lead plaintiff motion. Moreover, one of the other members of the Labaton

---

[2] Alternatively, reconsideration may be granted to correct clear error or prevent manifest injustice. *See Word*, 2004 WL 434038, at *2. Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes, but at least one court has held though that reconsideration is not warranted unless the prior decision is "dead wrong." *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

Group did deign to attend the hearing, but chose to say nothing.  If Mr. Greene of the State-Boston Retirement System believed Mr. Keller misspoke or inartfully described the facts surrounding the creation of the Labaton Group, he could have cleared up the record on the spot. In fact, Mr. Murray at one point stated "Mr. Greene can tell you [what happened], he's right here, but I would wager almost everything that that conference call was at the instigation of counsel."  Oral Argument Tr. at 24.  Mr. Greene's response?  Silence.  The declaration simply reiterates the Labaton Group's counsel's statements at oral argument, which the Court did not ignore, but rather found unavailing.

The Labaton Group's counsel, Christopher Keller, admitted that he caused the formation of the group: "We advised them [the firm's clients] on a regular basis of all new filings.  They contact us, and we as a matter of course advise them of other clients that are interested in it and they decide to go together."  Oral Argument Tr. at 41.  The new affidavit merely states more of the same, with some contradictions within.  It states Lothian wanted to join with a group with U.S. investors (Declaration of Esmond Hamilton, dated March 6, 2008, at ¶ 9), but Mr. Keller put them together with 2 other *foreign* investors, plus Boston.  In any event, the affidavit states Mr. Keller called around and formed a group, which was exactly what this Court found to be objectionable. Oral Argument Tr. at 62 ("I really don't like this idea of having this stable of people whom you put together.").  The members of the Labaton Group have nothing in common other than sharing a law firm.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If, for example, a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner.").

4

As noted in Mr. Furher's filings, and stated by this Court during oral argument, groups created for the sole purpose of making a lead plaintiff motion are improper.  Nothing in the Labaton Group's motion papers challenges this fact.  Most importantly, there is no ongoing business or other relationship among its four members. The four members may have spoken, but only at the behest of Labaton Sucharow for the sole purpose of creating a "group," and there is unlikely to be further business contact outside the litigation.

As pointed out in the lead plaintiff motion papers, the members of the "group" have opposed each other in other securities class actions.  This is not a "group" under the PSLRA and Southern District of New York courts have refused to allow such "groups" to aggregate their losses.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 336 (S.D.N.Y. 2005) (Owen, J.) ("Several of the putative plaintiffs are aggregated into artificial 'groups.'  Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA . . . and I reject it."); *In re Tarragon Corp. Sec. Litig.*, CA No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (denying motion by unrelated institutional investors); *Folksam Asset Mgmt v. General Motors Corp.*, No. 05-cv-8088 (RMB) slip. op. at 4-6 (S.D.N.Y. Jan. 17, 2006) (Berman, J.) (disallowing a group of institutional investors (including Fortis); *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (McMahon, J.) (noting judicial disapproval of aggregation); *Barnet v. Elan Corp., PLC*, Case No. 05 Civ. 2860 (RJH), 2005 U.S. Dist. LEXIS 16388, at *14-15 (S.D.N.Y. Aug. 8, 2005) (Holwell, J.) (court stated that it would be reluctant to recognize group of unrelated investors "cobbled together" to displace a larger movant); *In re eSpeed, Inc. Sec. Litig.*, Case No. 05 Civ. 2091 (SAS), 2005 U.S. Dist. LEXIS 14104, at *12-13 (S.D.N.Y. July 13, 2005) (Scheindlin, J.) (appointing a family group with greater losses than an institution as lead plaintiff, but refusing to aggregate a non-family

5

member's losses with the family: "If the Adib family is dependent upon Weber's losses to establish aggregate losses greater than the Pension Fund's, then Weber will not be considered as part of the Adib Group, and the Pension Fund will be named presumptive lead plaintiff, assuming it can satisfy the requirements of Rule 23(a).").

It was not simply the formation of the group that concerned the Court, but the nature of the group as well:

> But I'm thinking of the litigation process and whether really Congress intended that to start a situation where lawyers become clients of a firm for litigation purposes, so to speak, and because of this law which Congress passed are then assembled so that single counsel could represent them or a number of them together and thereby gain control of the suits and get the fees. I'm not sure that is what Congress intended

Oral Argument Tr. at 43.

As this Court did not overlook a single fact, or ignore controlling authority, the Labaton Group's invitation to make new law should be declined and its motion denied.

### C.    MR. FURHER'S MOTION WAS NOT "ATTORNEY-DRIVEN"

The Labaton Group asserts that the "new" evidence it now provides to the Court is that Mr. Furher's participation in this action is "attorney driven" because Murray Frank received his certification on the date his motion was due. (Labaton Group Mem. at 5-8.) Not only is this not newly-discovered evidence (the Labaton Group had the certification in question since December 28, 2007), but the argument is based on assumptions that are wholly incorrect. Mr. Furher made his choice of counsel when he signed the certification. That Mr. Steinmeyer didn't fax it to New York (he lives in San Diego) until later is irrelevant. Randall Steinmeyer has been Special Counsel to Murray Frank since November 2007 and has had a long-standing professional relationship with Mr. Furher. Mr. Steinmeyer also has a long-standing professional relationship with the Murray Frank firm. Mr. Murray and Mr. Steinmeyer had worked on numerous cases

6

together when Mr. Steinmeyer was at other firms, which led to their current association when Mr. Steinmeyer left the Coughlin Stoia firm.  To suggest that Mr. Steinmeyer somehow acted improperly in continuing his professional relationship with Mr. Furher after he left his old firm and came to Murray Frank (after a 3 month sabbatical) is mystifying.[3]  There is nothing irregular in the engagement of Murray Frank by Mr. Furher.

### D.    THE "NEW EVIDENCE" CITED BY THE LABATON GROUP DOES NOT ADDRESS THIS COURT'S CONCERNS

Finally, the "evidence" presented by the Labaton Group is also highly unlikely to "change the outcome" reached by this Court that Lothian, Deka, and Fortis, as foreign purchasers of the shares of a foreign corporation on a foreign exchange, are potentially atypical and inadequate and are subject to unique defenses.  Oral Argument Tr. at 55 ("Then I have the problem of Lothian.  They bought all their stock in the foreign exchange just as Deka and Fortis did, and we don't want to lose jurisdiction").  The Labaton Group does nothing to address these concerns in its motion papers, and, if anything, the law has grown more disfavorable in the past month.  Judge Cote recently refused to certify a class of foreign purchasers of the shares of a foreign company on a foreign exchange and disqualified the lead plaintiffs for such a class on subject matter jurisdiction grounds.  *In re SCOR Holding (Switzerland) AG Litig.*, Master File No. 04 Civ. 7897(DLC), 2008 WL 608606, at *2-9 (S.D.N.Y. Mar. 6, 2008).  While Murray Frank and Mr. Fuhrer will do their best to ensure that Mr. Furher's European neighbors who did

---

[3]    Also mystifying is the Labaton Group's delineation of the history of Mr. Steinmeyer's previous firm, Coughlin Stoia and in particular the fact that a former partner of the firm plead guilty to a crime, (Labaton Group Mem. at 1-2  n.1), considering that Andrei Rado, who appears on behalf of the Labaton Group here, was associated with Milberg LLP, where three of its former named partners have pled guilty and the firm and its senior partner is under indictment for the very same criminal conduct.  The actions of former Milberg and Coughlin partners are irrelevant, as neither Mr. Steinmeyer nor Mr. Rado is accused of improper conduct.

7

not have his foresight to purchase on a U.S. exchange are included in the class, there is no reason to appoint a lead plaintiff with a potentially crippling and dispositive infirmity.

### E.    MR. FURHER'S TRANSACTIONS WERE CONDUCTED IN THE UNITED STATES

The Labaton Group further attacks Mr. Fuhrer as inadequate, claiming that there is no "evidence" that Mr. Fuhrer purchased his securities in the United States. As an initial matter, Mr Fuhrer does not have to produce "admissible evidence" to a competing lead plaintiff movant. Moreover, at oral argument, Mr. Furher's counsel informed the Court that:

> Mr. Furher made all of his purchases in the United States on United States exchanges. And for one simple reason, and we asked him when talking to him: Why would you purchase here instead of over there? Isn't it easier to purchase over there? And he said yes, it is. He said, however, everything I have seen in the last few years Enron, Worldcom, the complete messes we have had here in Europe Parmalat, Royal Dutch, he says I have very little confidence in what is going on, and if I purchase in Europe I don't get protection if fraud is committed against me when I buy a stock.

> He buys in the United States so he gets the protection of United States securities laws. He pays a premium for that protection because he told me today at lunch he's got to pay commission to the guy in Belgium and he's got to pay double commission to pay someone in the United States to execute the trade. So he is paying double commissions. But he is doing that specifically so he gets the protection of the U.S. security laws.

Oral Argument Tr. at 33.

Indeed, Mr. Furher stated in his Opposition to the Labaton Group's motion to strike his Reply Brief that "he, as a purchaser of securities on an United States Exchange did not face the serious issues of subject matter jurisdiction that confronted Deka, Fortis, and Lothian as foreign purchasers of foreign securities on foreign exchanges." Furher Opp. Motion Strike Mem. at 2. Moreover, Mr. Furher had flown to New York from Belgium for the oral argument, and would have gladly testified if there was any good faith basis to doubt where his purchases were made.

The Labaton Group, nevertheless, without a single citation to case law, suggests that the Court should reconsider its decision appointing Mr. Furher Lead Plaintiff because Mr. Furher has

not provided them with "evidence" that he conducted his transactions in the United States. (Labaton Group Mem. at 9-10.)[4]  As a matter of law, the Labaton Group is not entitled to discovery from Mr. Furher and took none of the steps necessary to seek discovery.  Under the PSLRA, "an objecting class member is entitled to discovery 'only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3rd Cir. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)).  As the court in *Cendant* stated, the standard for discovery under this section of the PSLRA is high, because courts should "take care to prevent the use of discovery to harass presumptive lead plaintiffs."  *Id.*; *see also Ferrari v. Impath, Inc.*, No. 03 Civ. 5667(DAB), 2004 WL 1637053, at *6-7 (S.D.N.Y. July 20, 2004) (Batts, J.) (mere allegations of pay-to-play, although troubling, insufficient to allow discovery).

The Labaton Group has not come forward with any basis to conduct discovery and did not make a single attempt to obtain this Court's permission to obtain discovery or offer justification for such a drastic measure.  Mr. Furher's transactions themselves show they must have been conducted in the U.S.  The options reflect strike prices based on the ADS traded in United States as well as transaction prices in U.S. dollars.  Each Ericsson ADS represents 10 Class B shares, which trade in Stockholm.  Mr. Furher's October put contracts, for example, (sold on September 19, 2007) with the strike price of $42.50 and premium of $2.25 are in line with the then-current United States market price range of $40 per ADS rather than the market $4.00 per B share available in Stockholm.  Ericsson Class B shares (the stock actively traded on the Stockholm exchange) are currently trading at SEK10 in Stockholm or approximately $1.636

---

[4]  The Labaton Group also argues that the Court found that Lothian had the largest financial losses.  Labaton Group Mem. at 9.  A review of the transcript demonstrates no such finding.  Moreover, during the shorter Class period, Lothian had losses of only $523,826.04 under LIFO, significantly less than the $760,000 in losses that the Labaton Group conceded Mr. Furher suffered.  Oral Argument Tr. at 38.

9

per share.  Currently, the April 2008 puts trading in Europe, an in the money put such as Mr. Furher traded, is identified as follows:  April SEK10 puts, with a premium of SEK 0.40. Converted to current U.S. dollars, it would be the April $1.636 put with a premium of $.066. April 2008 puts trading in the U.S. sell for approximately 10 times as much, reflecting the 10:1 ratio of common shares to ADS.

A comparison of the available options in the United States and abroad show that the Mr. Furher's securities could only have been traded in the United States.  Based on the certification submitted by Mr. Furher, on September 19, 2007, Mr. Furher sold a put option for 10,000 shares of Ericsson stock with a strike price of $42.50 for a premium of $2.25.  On that that date, the Ericsson ADS, trading in the United States, traded from a low of $40.19 to a high of $40.79.  On the same date, Lothian purchased 306.00 B shares in Stockholm for SEK26.888, or $4.073.  If Mr. Furher's options were purchased in Europe the strike prices would be around $4 not $42. There is no reason to question where Mr. Furher executed his trades.

### F.    PERSONAL ATTACKS ARE MISPLACED ON THIS MOTION AND AFFORD NO REASON TO RECONSIDER

The Labaton Group at various times in its brief calls Mr. Murray "strident," Mr. Steinmeyer "mysterious," and impugns the abilities of the Murray Frank firm.  Mr. Murray and Mr. Steinmeyer were both at the hearing and this Court can form its own judgments about their personalities.  The Court can also form its own opinion as to Mr. Murray's legal competence as well.  Mr. Murray has argued before this Court in *Vladimir v. Deloitte and Touche*, Civil Action No. 95 CIV 10319 (RPP), *Burke v. China Aviation (Singapore) Corp.*, Civil Action No. 05-CV-00060 (RPP), and this case.  As for Judge Cote, the Labaton Group cites to Judge Cote's comments in *Ramp Corp. Sec. Litig.*, No. 05-cv-6521(DLC), 2008 WL 58938, at *3, 4 n.7 (S.D.N.Y. Jan. 3, 2008) (Labaton Group Mem. at 7 n.4), while failing to mention that Judge Cote

also noted that: "As far as the conduct of the lawsuit was concerned, Lead Counsel exercised good judgment in negotiating a settlement after the 2006 Opinion eviscerated the Lead Plaintiff's claims. Settlements are to be encouraged, and pursuing discovery, summary judgment practice, and a trial ran considerable risks for the class and would have substantially eroded its chance to obtain a reasonable sum in settlement of the litigation." *Id.* at *4. It is ironic that the Labaton Group cites Judge Cote's criticism of the initiation of the *Ramp* lawsuit when that decision was made by Eric Belfi (who is now at Labaton working for Mr. Keller and is listed on their motion papers) while he was at Murray Frank.

Moreover, in *In re Qiao Xing Sec. Litig.*, 07 CV 7097 (DLC) (SDNY), which post-dates the *Ramp* case, Judge Cote appointed Murray Frank Lead Counsel. Earlier this month, after the case settled, Judge Cote stated that: "having reviewed many notices of pendency and proposed settlement, this is one of the best-drawn I've had occasion to review. I want to thank you . . . . I appreciate the effort. It showed. And I want to give my congratulations to the parties for the settlement." Settlement Hearing Tr. at 2.

11

## CONCLUSION

The motion for reconsideration fails to meet the high standard required of such a motion, provides no newly discovered evidence, and is based on nothing more than whole-cloth suppositions and improper, questionable assertions. The motion should be denied.

Dated:  March 20, 2008

**MURRAY, FRANK & SAILER LLP**

By:      _____/s/_____
      Brian P. Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile:  (212) 682-1892

*Plaintiff's Lead Counsel*

Of Counsel:
Randall Steinmeyer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2008, I caused to be electronically filed the foregoing JACQUES FURHER'S MEMORANDUM OF LAW IN TO THE LABATON GROUP'S MOTION FOR RECONSIDERATION with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

I FURTHER CERTIFY that I caused the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

N/A

**MURRAY, FRANK & SAILER LLP**

By:          /s/
Brian Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
Brian Brooks
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Lead Counsel for the Class**

1